# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TFI TUTTI LLC, WOO YOUNG CHOI and FLORIS TUTTI INTERNATIONAL, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. N23C-03-122 PRW CCLD |
| v. | ) ) | |
| SONO AMERICA, INC. (F/K/A DAEMYUNG AMERICA, INC.) and DAEMYUNG TUTTI, LLC, | ) ) ) ) | |
| Defendants. | ) | |

Submitted: December 14, 2023
Decided: December 18, 2023

## ORDER GRANTING DEFENDANT SONO AMERICA, INC.'S <u>MOTION TO DISMISS</u>

**HAVING FULLY CONSIDERED** the Defendant Sono America Inc.'s Motion to Dismiss (D.I. 18); the Plaintiffs' Answer opposing dismissal (D.I. 19); Defendant Sono America Inc.'s Reply supporting its own dismissal request (D.I. 22); the parties' cited authorities; and Plaintiffs' Amended Complaint and exhibits attached thereto (D.I. 14). This contest is a contractual one, and accordingly Defendant Sono America Inc.'s Motion to Dismiss all implied and non-contractual claims (Counts II – V) is **GRANTED**.

(1) Both sides are familiar with the factual background and operative agreements mentioned herein; so, the Court need not spell all that out in detail.

(2)    Both sides are equally familiar with the procedural background of this matter and the pending motion; so, that is explained just briefly here.  In sum, Plaintiffs brought a six-count amended complaint against Defendants.  Defendant Sono America Inc. characterizes this action as an entirely contractual dispute, and thereby moves to dismiss all claims, minus the breach-of-contract claims.  Plaintiffs have withdrawn the sixth count (quantum meruit, unjust enrichment, and constructive trust), and opposed the motion as to the other claims.  Unsurprisingly, Plaintiffs argue that the parties' contractual agreements do not resolve the conduct giving rise to the fraud, tortious interference and implied covenant of good faith and fair dealing claims.

(3)    Under this Court's Civil Rule 12(b)(6), a party can move to dismiss for failure to state a claim upon which relief can be granted.[1]  When considering a motion under Rule 12(b)(6), the Court (i) accepts as true all well-pled factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiffs.[2]  "Dismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or [where] under no reasonable interpretation of the facts alleged could the complaint [be read to] state a claim for

---

[1]    Del. Super. Ct. Civ. R. 12(b)(6).

[2]    *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

which relief might be granted."[3]

(4)     After a thorough review of the Motion to Dismiss, the response thereto, and the record to date, the Court concludes that the terms of the parties' joint venture agreement dispose of the fraud, tortious interference and implied covenant of good faith and fair dealing claims.

(5)     *First,* Plaintiffs allege that Defendants misrepresented their intent to compensate Mr. Choi and complete the development of the stores.[4]  But, the Joint Venture Agreement directly addresses those matters.[5]  Too, these representations allegedly occurred after the execution of the contract and relate to the *performance* of Defendants' obligations under the Joint Venture Agreement.  Thus, the anti-bootstrapping rule bars Plaintiffs' fraud claims based on these allegations.[6]

(6)     Relatedly, Plaintiffs allege that Mr. Hwang misrepresented Defendants' commitment to participate in other business opportunities.[7]  Yet, Plaintiffs allege no facts raising a reasonable inference that "Mr. Hwang knew" that the Defendants'

---

[3]     *Kable Prod. Servs., Inc. v. TNG GP*, 2017 WL 2558270, at *5 (Del. Super. Ct. June 13, 2017).

[4]     Amended Complaint (D.I. 14) ¶¶ 218(a)-(b).

[5]     *See* Am. Compl., Exhibit A ("Joint Venture Agreement") Art.III.B and Art.IV J.

[6]     *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.,* 2005 WL 445710, at *3 (Del. Super. Ct. 2005) ("A plaintiff must sue in contract and not in tort" where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law."); *MicroStrategy Inc. v. Acacia Research Corp.,* 2010 WL 5550455, at *17 (Del. Ch. 2010) (a party "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations.").

[7]     Am. Compl. ¶ 218(c).

alleged promises were false.[8] Such conclusory allegations are insufficient to state a claim for promissory fraud.[9]

(7)     *Next,* Plaintiffs allege that Defendants tortiously interfered with Plaintiffs' contracts and prospective business opportunities.[10] As to tortious interference with contract, Plaintiffs argue that, because Defendants failed to cover the operating expenses of the joint venture stores, third parties subsequently enforced cross-default provisions on leases of other, non-joint-venture stores.[11] But Plaintiffs do not identify any contractual obligation on the part of Defendants to continue funding the joint venture stores once they opened and became fully operational.[12]

---

[8]     *See id.* ¶¶ 218(c)(i)-(ii); *see also id.* ¶ 218(c)(iii) (failing to provide any specific facts indicating that "Mr. Hwang knew at the time that Defendants never had the intention to follow through" on the representation that "Mr. Hwang told Mr. Choi that Defendants had decided to support the [Kiosk Project]"); *id.* ¶¶ 218(c)(iv), 219 ("Mr. Hwang committed to [the Kiosk Project] … defendants knew their misrepresentations were false at the time they were made or failed to correct them before Plaintiffs took in action in reliance on the material misrepresentations.").

[9]     *CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, 2022 WL 1749181, at *15 (Del. Super. Ct. May 31, 2022) (citation omitted) (When a plaintiff pleads a claim of promissory fraud, the plaintiff "must plead specific facts that lead to a reasonable inference that the promisor had no intention of performing at the time the promise was made.")

[10]    Am. Compl. ¶¶ 223-238.

[11]    Am. Compl. ¶¶ 106-107.

[12]    Plaintiffs allege that the "[Joint Venture Agreement] called for Mr. Choi to invest 'sweat equity' in…paying half of initial capital and *half of their net operating costs* once they opened. [Sono America Inc.] and [Sono International, Co. Ltd.] were to 'front' the build-out costs and *pay the other half of the net operating costs.*" *Id.* ¶ 18 (emphasis added); *see also id.* ¶¶ 50-51, 59. The Court could not identify any provisions in the Joint Venture Agreement requiring Defendants to pay "net operating costs." *See Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *11 (Del. Ch. Sept. 22, 2016) ("As discussed below, whether the claim is brought under Section 766 or Section 766A, a plaintiff cannot prevail on a tortious interference with contract claim if the essence of his complaint is that the defendant refused to deal when he had no

(8)    As to prospective business opportunities, Plaintiffs have not shown that it was wrongful for Defendants to back out of any of the proposed projects. The Joint Venture Agreement required, in part, that Mr. Choi present Defendants with potentially competing business opportunities.[13]   Whether Defendants decided to exercise their contractual rights to pursue those opportunities alone or in partnership with the Plaintiffs cannot be the basis for a tortious interference claim.[14]

(9)    *Lastly*, no "unanticipated gap" exists for the implied covenant of good faith and fair dealing to fill as to the amount and timing of executive compensation, or the opening of Phase 2 stores.[15]   The Joint Venture Agreement expressly governs these topics.[16]   The implied covenant is not a means to re-write and insert what the parties could have provided for at the time of contracting.[17]

---

obligation to deal, or that the defendant's alleged tortious conduct amounted to nothing more than the defendant acting within its contractual rights.").

[13]   *See* Joint Venture Agreement, Art. V.I.

[14]   *See Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009) ("An alleged interference in a prospective business relationship is only actionable if it is wrongful.").

[15]   Am. Comp. ¶ 243.

[16]   *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.,* 622 A.2d 14, 23 (Del. Ch. 1992), *aff'd,* 609 A.2d 668 (Del. 1992) (The implied covenant does not apply when "the subject at issue is expressly covered by the contract."); *see* Joint Venture Agreement, Art.III.B, and Art.V.J.

[17]   *Allied Capital Corp. v. GC–Sun Holdings, L.P.,* 910 A.2d 1020, 1035 (Del. Ch. 2006) (Courts should not imply "a contractual protection when the contract easily could have been drafted to expressly provide for it.").   In their Answering Brief, Plaintiffs raise for the first time that the absence of a provision to terminate the license or revert ownership of the trademark constitutes a "gap" for the implied covenant to fill. Ans. Br. at 22-23. The Joint Venture Agreement, however, contemplates that the Licensing Agreement can be "amend[ed], modif[ied] and/or otherwise ma[de] changes to…".   *See* Joint Venture Agreement, Art.V.F.3. and 11; *See* Joint Venture Agreement, Ex. A ("Licensing Agreement") § 7.   The Licensing Agreement also contains

(10)   Given all this, the Court **GRANTS** Defendant Sono America Inc.'s Motion to Dismiss all implied and non-contractual claims (Counts II – V).

**SO ORDERED this 18ᵗʰ day of December, 2023.**

_____
Paul R. Wallace, Judge

Original to Prothonotary
cc:   All counsel via File & Serve

---

termination provisions that allows for modification through the Joint Venture Agreement.  *See* Licensing Agreement § 7.